164 So. 613

NIELSEN v. PLANTERS TRUST & SAVINGS BANK OF OPELOUSAS.

No. 33572.

Nov. 4, 1935.

Rehearing Denied Dec. 2, 1935.

646

E. G. Burleigh, of Opelousas, for relator.

L. B. Sandoz, W. C. Perrault, and Dudley L. Guilbeau, all of Opelousas, for respondent.

HIGGINS, Justice.

Plaintiff, a payee of a cashier's check, brought this action against the bank which issued the check to him, to recover the sum of $1,200, the face value thereof, as damages, for illegally paying the check to the indorsee, after plaintiff had notified defendant not to honor the check, because it had been negotiated for an illegal consideration, i. e., covering losses sustained in gambling at roulette.

Defendant filed exceptions of no right or cause of action, which were sustained by the district court. Plaintiff appealed and the Court of Appeal, by a divided court, affirmed the judgment on the ground that plaintiff was indirectly attempting to secure the return of that which was lost at gaming, contrary to the provisions of article 2984 of the Revised Civil Code.

The petition alleges that plaintiff was employed as a buyer for a cotton commission merchant in the city of New Orleans and worked in the city of Opelousas; that he received notice from his employer to discontinue buying cotton in the Opelousas territory and to hold himself in readiness to be transferred to such other cotton territory as they were contemplating sending him; that on Saturday, November 24, 1934, he received from his employer a check for the sum of $1,528.50, covering the balance due him for services performed; that in making preparations to leave for his home in Houston, Tex., the next day, or Sunday, November 25, 1934, he found it necessary to cash the check, in order to use a portion of it to pay debts he had incurred in the city of Opelousas; that on the same day he received the check, he went to the Planters Trust & Savings Bank of Opelousas, defendant herein, and negotiated the check, receiving therefor a cashier's check of the bank, drawn to petitioner's order and payable on demand for the sum of $1,200 and the difference, less exchange charges, in cash; that in the late afternoon of November 24, 1934, he visited the gambling establishment owned and operated by Sidney Amy in a room in the James Hotel, in the city of Opelousas, where he began playing and betting at a banking game operated and "banked" by Sidney Amy and played by means of a gambling device known as a roulette wheel; that he played roulette principally with chips purchased for that purpose from Sidney Amy, but that money was also used by petitioner from time to time, in lieu of or in addition to chips, to cover the numbers of the roulette wheel on which he had placed his bets; that after a while his losses exhausted his cash, whereupon he indorsed the $1,200 cashier's check and delivered it to Sidney Amy in exchange for more chips and for more cash with which to continue playing the roulette wheel; that as the playing progressed, his losses continued to mount and as his chips or money would become exhausted, he would obtain, against the cashier's check, from Sidney Amy, additional chips and money with which to continue betting; that this process kept up until petitioner's losses consumed the amount of the check, all of which he had lost to the said Sidney Amy, the "banker"

of the game; that the cashier's check was a negotiable instrument within the intendment of the Negotiable Instrument Law; that the operation of a banking game is expressly prohibited by the laws of this state; that the indorsement and delivery by petitioner of the cashier's check to Sidney Amy for chips and money to be used in betting on the banking game resulted in the entire loss of the proceeds of the check in the game, rendering the indorsement and negotiation of the check null and void and of no effect, because the same was based upon an illegal consideration obtained by unlawful means, in consequence of which Sidney Amy was not the holder in due course and his pretended title to the instrument was absolutely null and void; that on Monday morning, November 26, 1934, petitioner went to the defendant bank and informed its officers of the facts and circumstances above recited and claimed the right to the said check and its proceeds and notified the bank not to accept the negotiation of the check if presented by Sidney Amy; that the officer of the bank informed plaintiff that it would refuse to accept and pay the check to Sidney Amy, provided plaintiff deposited $200, to indemnify the bank against any loss and damage that it might incur, as the result of such action; that petitioner had no funds and was unable to comply with this requirement of the bank; that thereafter Sidney Amy presented the check to the bank for payment and petitioner, on information and belief, alleges that the bank accepted the negotiation and paid the proceeds of the check to Sidney Amy on November 26, 1934, under an arrangement whereby the bank was to be indemnified and fully protected against any loss that it might incur by reason of honoring and paying the check; and that the bank is liable to plaintiff for the loss incurred as a result of its wrongful and illegal action.

In considering a case on an exception of no right or cause of action, the allegations of fact contained in the petition are accepted as true. As we understand the petition, the transactions between the bank and the plaintiff were entirely legal and wholly disassociated and unconnected with the alleged gambling transactions between the plaintiff and Sidney Amy. The alleged violation of the law took place solely and only between plaintiff and Sidney Amy, who was not a party to this suit and against whom the plaintiff is not asserting any claim herein. Plaintiff is not attempting to recover the cashier's check negotiated to Amy, but the sum of $1,200 deposited with the bank and which the bank is alleged to have illegally paid to Sidney Amy, after having been fully notified and apprised that he had neither legal title to the cashier's check nor the deposit of $1,200. Therefore, articles 2983 and 2984 of the Revised Civil Code, which provide that neither the winner nor loser in a gambling transaction can recover from each other the amount that has been lost, have no application to the present case.

It is clear that the operation of a roulette wheel as alleged in the petition is a violation of the law of this state. Act No. 12 of 1870. Bagneris v. Smoot, 159 La. 1049, 106 So. 561. Consequently, the negotiation and delivery of the check by the

plaintiff to Sidney Amy was illegal, null, and void, for lack of a lawful consideration. Articles 1893 and 1895, Rev.Civ. Code; Uniform Negotiable Instrument Statute—Act No. 64 of 1904, §§ 25, 28, 52, 53, and 55. Sidney Amy was therefore not a bona fide holder in due course for value. Sections 3 and 4 of Act No. 64 of 1904.

■■ The indorsement and delivery of a check is not payment but an order for payment. Palmer v. Golden, 127 Misc. 487, 216 N.Y.S. 509. Therefore, plaintiff had not paid the gambling loss and Sidney Amy could not have enforced payment of the check against plaintiff. Articles 2983 and 2984, Rev.Civ.Code.

In the case of Drinkall v. Movius State Bank, 11 N.D. 10, 88 N.W. 724, 57 L.R.A. 341, 95 Am.St.Rep. 693, the identical situation here presented was considered and the case decided in favor of the plaintiff, the court holding, in a well-considered opinion, that the bank, after having been notified that the cashier's check was negotiated on an illegal consideration, was without any right to pay the indorsee, who obtained it through unlawful means, i. e., gambling. See, also, Whitlock v. Stewart, 15 Ala. 601; Commercial Nat. Bank v. Spaids, 8 Ill.App. 493; Haller v. Workingmen's Cooperative Bank, 263 Mass. 37, 160 N.E. 324, 56 A.L.R. 1320; Thomas v. First Nat. Bank, 213 Ill. 261, 72 N.E. 801; Holman v. Ringo, 36 Miss. 690; Burke & Co. v. Buck, 31 Nev. 74, 99 P. 1078, 22 L.R.A.(N.S.) 627, 21 Ann.Cas. 625. The case is in point and decisive of the issues here presented.

We have been referred to the case of Davis v. Holbrook, 1 La.Ann. 176, where the court held that money placed with a stakeholder, to be paid to the winner of a bet on an election, could not be recovered by the loser, because betting on elections was in violation of the laws of this state and, therefore, the court would not interfere. That case is not applicable here, because depositing the money with the stakeholder was directly connected with the unlawful transaction of betting on the election. In the instant case, the deposit with the bank was legal in every way.

We are of the opinion that the petition states a right or cause of action and that the exceptions should have been overruled.

For the reasons assigned, the judgment of the Court of Appeal of the First Circuit, affirming the judgment of the district court is annulled, the exceptions of no right or cause of action are overruled, and the case is remanded to the district court for further proceedings, according to law and not inconsistent with the views herein expressed; the defendant to pay all costs of the Court of Appeal and of this court; all other costs to await final disposition of the litigation.